UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

UNITED STATES OF AMERICA,

　　-against-

KARINA ORTEGA and CARLOS ORTEGA,

　　　　　　　　　　　*Defendants.*

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10-19-15

15 Cr. 320 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

Defendants Carlos Ortega ("Carlos") and Karina Ortega ("Karina") (collectively, "Defendants") move (1) to suppress a firearm found during a warrantless search of their vehicle, (2) to suppress statements they made after their arrest, and (3) to sever their trials. For the following reasons, these motions are denied.

## BACKGROUND

### A. Defendants' Affidavits

Defendants each submitted affidavits in support of their motion: On the night of March 8, 2015, Carlos was driving Karina and her daughter to Karina's apartment building. Karina Aff. ¶ 4; Carlos Aff. ¶ 4. As they approached Karina's building, they noticed the passengers in a car driving by staring at them. Karina Aff. ¶ 5; Carlos Aff. ¶ 5. Fearing for their safety, Carlos drove around the block. *Id.* When they returned to the building, the men in the car were waiting for them. Carlos again tried to get away, but the men in the car followed them until they reached a red light, at which point the men got out of their car and attacked the car with baseball bats, shattering some of its windows. Karina Aff. ¶¶ 5–7; Carlos Aff. ¶¶ 5–7. Carlos then drove back

1

to the building and Karina went inside to drop off her daughter. Karina Aff. ¶ 8; Carlos Aff. ¶ 8. Karina states that Carlos instructed her to retrieve two items from her apartment: "a baseball bat and a woman's shoulder bag that belonged to me that Carlos said was in the closet. I got both items and brought them back to the vehicle." Karina states that at the time she retrieved the bag from her apartment, the "zipper was closed, and I could not see inside it."[1] Karina Aff. ¶¶ 9–10. Carlos states that Karina returned to the car with a baseball bat and a woman's shoulder bag, and he did not see what was inside the shoulder bag. Carlos Aff. ¶¶ 9–10. While neither state where the bat was located, it is uncontested that the bat was in the front seat. Both Karina and Carlos state that Karina placed the bag in the backseat. Karina Aff. ¶ 11; Carlos Aff. ¶ 10. They were later stopped by police. Karina Aff. ¶ 12; Carlos Aff. ¶ 11.

There is no challenge to the stop, but both Karina and Carlos challenge the validity of the subsequent search, which found a gun inside the shoulder bag that Karina took from the apartment.

### B. Officers' Testimony

The Court held a hearing on September 16, 2015, at which four NYPD Officers testified: Antonio Capoccetta, Erick Reyes, Luis Soltero, and Ruben Serrano.

Officers Capoccetta and Reyes saw Defendants' vehicle traveling westbound on East 150th Street at 1:15 a.m. Tr. 6, 50. They noticed tinted windows and the rear window on the driver's side was broken and, when the car passed, that the rear window was also shattered. After stopping the vehicle, Officer Capoccetta approached on the driver's side and Officer Reyes

---

[1] In light of these statements, it is clear what the purpose of the baseball bat was. *See Michigan v. Long*, 463 U.S. 1032, 1061 (1983) (Brennan, J., dissenting) ("[A] baseball bat[] can be used as a very effective weapon."). Carlos does not explain why he instructed Karina to get the purse from her closet, nor does Karina. Neither say anything about the contents of the purse, but both maintain that the woman's bag was zipped and—unlike the baseball bat— was placed in the backseat.

2

approached on the passenger side. *Id.* at 8, 51. Officer Capoccetta noticed glass all over the seats and both officers noticed a baseball bat between Karina's left leg and the center console. *Id.* at 8, 52. Officer Reyes took the bat out and Officer Capoccetta asked Carlos for his license. *Id.* at 10, 52. Carlos handed Officer Capoccetta his driver's permit and Karina handed him her license. Officer Reyes saw Karina remove a black wallet from the purse which was between her legs. *Id.* at 10, 52–53. Officer Capoccetta asked who the car belonged to and Karina said it belonged to her sister. *Id.* at 10. Officer Capoccetta asked what happened to the car, and Carlos responded, "We just got in a fight with the Cholos." Karina responded, "[W]e got a beef with the Cholos. They did this." *Id.* at 11. Officer Capoccetta said he believed Carlos seemed nervous, had his hands on the steering wheel and was looking left to right, and answered questions very rapidly. *Id.* He testified that Karina seemed annoyed by the stop. *Id.* Officer Reyes said both Karina and Carlos seemed nervous. *Id.* at 53–54.

Officer Capoccetta testified that they moved to the back of the vehicle and discussed their belief that the vehicle was stolen. *Id.* at 11–12, 54. Officer Reyes lined up the bat with the broken glass in the windows and it "lined up well." Officer Capoccetta testified that based on Defendants' statements about their altercation with the Cholos, he believed "[t]hat there might be additional weapons in the car." *Id.* at 12. In light of that potential danger, Officer Capoccetta called Officers Soltero and Serrano for backup. *Id.* at 12, 54, 90. Officer Capoccetta then told Carlos to get out of the car and remained at the rear of the car with him. *Id.* at 13, 54. Officer Reyes directed Karina to get out of the car, and before she did, he saw her toss her purse into the backseat. *Id.* at 55. He did not see where the purse landed or anything inside the purse. *Id.*

Officers Soltero and Serrano then arrived. *Id.* at 13, 55, 90. Officer Serrano stood in front of Carlos at the left rear, and Officer Capoccetta stood in front of Karina at the right rear facing

3

away from the vehicle. *Id.* at 14, 55. Meanwhile, Officers Reyes and Soltero looked in the vehicle, with Officer Reyes on the passenger side of the vehicle and Officer Soltero on the driver side. *Id.* at 14, 56, 91. At this time, Officers Capoccetta and Serrano saw Karina move towards the passenger side rear door three times, at one point touching the door handle. *Id.* at 14–15, 110. Officer Serrano testified that Karina said she needed to get her identification from the car, while Officers Capoccetta and Soltero testified that she said she needed to get something. *Id.* at 14, 91, 110.

Officers Reyes and Soltero began to look into the backseat. *Id.* at 56, 92–93. Officer Reyes testified that he opened the rear passenger door while Officer Soltero testified that Officer Reyes was looking through the rear window. *Id.* at 56–57, 92. Officers Reyes and Soltero both saw the barrel of the gun sticking out of the purse, yelled out "hot lunch," the code word for a firearm, and Officer Reyes said "cuff [th]em up." *Id.* at 16, 58, 93, 110. Officer Reyes testified that Officer Soltero "grabbed the ends of the purse and slid out the gun," leaving the gun "next to the bag," while Officer Soltero testified that he placed the gun on top of the purse. *Id.* at 58, 78–79, 94. Officer Capoccetta testified that he later took the firearm and the purse from the vehicle and brought it to the precinct. *Id.* at 17.

## DISCUSSION

### I. Applicable Law

If an officer has a reasonable suspicion that the subject of a traffic stop is armed and dangerous, the officer may frisk the suspect for weapons. *See Pennsylvania v. Mimms*, 424 U.S. 106, 111–12 (1977) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). In *Michigan v. Long*, 463 U.S. 1032 (1983), the Supreme Court expanded this rule to permit a "protective search" of the passenger compartment of a suspect's vehicle, "limited to those areas in which a weapon may be

4

placed or hidden." *Id.* at 1049. So long as the officer has a "reasonable belief based on specific and articulable facts . . . that the suspect is dangerous and the suspect may gain immediate control of weapons," *id.*, the officer may "frisk" the accessible areas of the suspect's vehicle for weapons, *see United States v. Hassock*, 631 F.3d 79, 85 (2d Cir. 2011) ("[I]n a sense, *Long* authorized a 'frisk' of an automobile for weapons.").

## II.  Analysis

### A.  Specific and articulable facts supported the officers' reasonable suspicion that Defendants were dangerous and that the vehicle contained weapons.

The officers' testimony presented the following specific and articulable facts as a basis for their reasonable suspicion that Defendants were dangerous and that the vehicle contained weapons: (1) the officers stopped the vehicle at approximately 1:15 a.m. in a high-crime neighborhood; (2) the vehicle's rear window and rear driver-side window were broken; (3) broken glass was visible inside the vehicle; (4) a baseball bat, an effective weapon, was next to Karina's leg; (5) the bat had glass shards in it; (6) the bat lined up with the breaks in the windows; (7) Carlos appeared nervous and Karina appeared nervous and annoyed; (8) Karina informed the officers that the vehicle belonged to her sister; and finally (9) Karina and Carlos each admitted that they had been in a fight with a known gang in the precinct where the stop occurred.

Defendants argue that the facts identified by the government do not support a reasonable belief that the officers' safety was in danger. Karina Post-Hr. Reply at 1–4. First, Defendants assert that "no specific and articulable facts about the location of the traffic stop . . . indicated a threat to the officers' safety." *Id.* at 1. Officer Reyes testified—based on his personal experience in the precinct and crime reports he had read—that the area was a high-crime neighborhood. *See* Tr. 59–60 ("We constantly get radio runs for shootings, drug activity, assaults, weapons."). That

5

fact alone bespeaks caution. "[O]fficers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). Second, Defendants argue that because Defendants gave police a reasonable explanation for the vehicle's broken windows, the police could not have believed the bat in the car was the same bat that broke the car windows. *See* Karina Post-Hr. Reply at 1–2. But just because a suspect tells a story does not mean officers must believe it—especially since it was just as plausible that the baseball bat was used to break into the vehicle. Third, Defendants assert "there is nothing illegal or dangerous about possessing a baseball bat." *Id.* at 2. Baseball bats may be legal, but that does not mean they are not dangerous. *See Long*, 463 U.S. at 1061 (Brennan, J., dissenting) ("[A] baseball bat[] can be used as a very effective weapon."). Indeed, the car was damaged with baseball bats. Fourth, Defendants argue that the fact that they were attacked says nothing about the officers' safety. Karina Post-Hr. Reply at 2. But it was reasonable for officers to infer that suspects who have "a beef" with a known dangerous gang might themselves be armed and dangerous. Fifth, Defendants assert that Karina's and Carlos's nervousness or agitation "is of limited significance in determining reasonable suspicion." *Id.* at 3 (quoting *United States v. Jackson*, 2015 WL 4557401, at *10 (S.D.N.Y. July 29, 2015)). The Court agrees that the fact that Karina or Carlos were nervous or annoyed is entitled to little weight in deriving an inference that they posed a threat to officer safety. Finally, Defendants argue Karina's behavior outside the vehicle did not support an inference that a weapon was inside; rather, she "might have had other items in the back seat that she did not want the officers to locate." *Id.* at 3. But in light of the other facts suggesting the possible presence of additional weapons, the officers were justified in fearing for their safety especially since Karina made three attempts to access the rear of the vehicle where

6

the gun was found.

Even if the foregoing facts are not sufficient each by itself to support reasonable suspicion, taken together, however, the Court finds that the officers had a reasonable basis to believe they were in danger and that the vehicle contained additional weapons so that the search was appropriate.

### B. Any irregularities or inconsistencies in the officers' testimony are irrelevant or immaterial.

Defendants assert that the officers' testimony was illogical and inconsistent on crucial details, and so cannot be credited. *Id.* at 5; Karina Post-Hr. Br. at 2. Defendants assert six flaws in the officers' testimony which eviscerate their credibility: (1) inconsistencies regarding whether Karina's purse was on her lap or on the floor when officers first stopped her; (2) Officer Reyes's testimony that he shined his flashlight towards the purse and did not see the gun when he first encountered Defendants; (3) the implication that Karina did not zip the purse before throwing it to the backseat; (4) inconsistencies regarding whether the gun was found directly behind the driver's seat or in the center of the backseat, and whether Officer Soltero slid the gun out and placed it next to the purse or if he took the gun out and placed it on top of the purse; (5) inconsistencies regarding whether the handle or the barrel of the gun was sticking out, and whether the gun was silver or black; and (6) Karina's movements towards the back seat. *See* Karina Post-Hr. Br. at 2–6.

None of these claimed flaws demonstrate that the officers' testimony is incredible. First, whether Karina had the purse in her lap or between her legs on the floor of the vehicle is not significant. The point is that the purse was in the front seat, not the backseat, as Defendants assert in their affidavits. Furthermore, at that time, the officers were speaking with Defendants and had no reason to be focusing on Karina's purse, as they were just beginning to assess the

7

situation. The Court credits the officers' testimony that the purse was in the front seat along with the baseball bat, the other item that Karina brought into the vehicle.

Second, it is irrelevant that Officer Reyes did not see the gun in the purse when he first shined his flashlight on the purse: whether the gun was visible in the purse while it was with Karina in the front seat has no bearing on whether it was visible after being tossed into the backseat. Likewise, Defendants' challenge regarding the bag's closure is meritless. Defendants state that "common sense dictates that anyone in [Karina's] position would zip the purse closed before 'tossing' it into the back seat." *Id.* at 3. This is pure speculation. Besides, what "common sense dictates" is not relevant here. It is entirely plausible that Karina failed to close the bag before tossing it into the backseat, particularly in light of the fact that officers were surrounding her car and she sought to act quickly.

None of the other so-called inconsistencies regarding where on the back seat the gun landed (behind the driver's seat or in the middle), how Officer Soltero removed the gun from the purse (slid it out or took it out), and where he then placed the gun (alongside the purse or on top of it) is significant. The car was of an average size, so the distance between the middle of the backseat and the area directly behind the driver's seat was slight. The officers' descriptions may be imprecise; but they are hardly contradictory. Likewise, the minor discrepancies in how Officer Soltero removed the gun from the purse and where he then put it do not undermine the officers' credibility.

Finally, Defendants argue that the testimony regarding Karina's movements towards the backseat are illogical. They assert (1) that Karina would not have stated that she had to get her identification from her purse because she knew Officer Capoccetta had her identification; (2) that Karina could not have seen that the barrel of the gun was sticking out of the purse and so would

8

have no motivation to move towards the backseat; and (3) that the officers would not have allowed her to move three times towards the back seat because they were attempting to keep her at the scene. *Id.* at 5–6. These arguments are rejected. Karina may have concocted a poor excuse for needing to get to the back seat, but that does not make the officers' testimony implausible; that she sought to get to the back seat to further conceal the gun without knowing any portion of the gun was visible is entirely plausible; and the fact that officers were not more stringently corralling Karina does not suggest that she did not make furtive movements towards the back seat.

Defendants also argue that the officers' testimony was inconsistent with the notes in Officer Soltero's memo book, and the notes of an Assistant District Attorney ("ADA") originally involved in the investigation. Defendants point to discrepancies in what the officers saw (the ADA's notes reflect that the officers said they saw the handle of a gun sticking out, not the barrel), and what color the firearm was (the notes reflect that the officers said it was silver, while they testified at the hearing that it was black). The Court finds these discrepancies immaterial. That the officers may have misidentified the color of the gun and the portion that they saw during their meeting with the ADA does not suggest that their testimony is not credible.

The Court credits the testimony of the four officers with respect to the stop and subsequent search on March 8, 2015. Whatever minor inconsistencies Defendants have claimed, they do not impair the officers' credible recounting of the events at issue. The officers lawfully stopped the vehicle and, while conducting a lawful protective search of the vehicle, observed the gun in the purse in the back seat.

Since the Court declines to suppress the firearm, Defendants' motions to suppress their post-arrest statements are denied. Likewise, Defendants' motions to sever are denied without

prejudice, as they are premature.

## CONCLUSION

For the foregoing reasons, Defendants' motions to suppress and sever are denied.

The Court excludes time between the date of this opinion and a conference scheduled for Thursday, November 5, 2015, at 11 a.m., in Courtroom 14C, under the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A). Allowing the parties' time to consider how to proceed next in light of this opinion is in the interests of justice, and outweighs the interests of the public and Defendants in a speedy trial.

Dated: New York, New York
       October 19, 2015

SO ORDERED

*[signature]*

PAUL A. CROTTY
United States District Judge